FLAGLER et al. v. DEVLIN et al.

(Supreme Court, Appellate Division, Fourth Department.   November 15, 1905.)

1. EJECTMENT—PARTIES PLAINTIFF—GRANTORS IN CHAMPERTOUS CONVEYANCE.

To entitle parties to maintain ejectment under Code Civ. Proc. § 1501, authorizing the maintenance of such an action by a grantee in the name of the grantor when the conveyance under which he claims is void because the property was held adversely to the grantor, the existence of the prescribed conditions and a full compliance with the statutory requirements must be established.

2. SAME.

Where a grantee in a champertous deed brought partition against certain of his grantors and the person in adverse possession of the premises, and at the partition sale bought the premises, thereby acquiring his grantors' interest, such grantors could not thereafter maintain ejectment against the person in adverse possession for the grantee's benefit, under Code Civ. Proc. § 1501, authorizing the maintenance of such an action by a grantee in the name of his grantor, when the conveyance under which the former claims is void because the property conveyed was held adversely to the grantor.

3. PARTITION—SALE—TITLE OF PURCHASER.

Where a defaulting defendant in partition owned no interest in the premises at the time of the bringing of suit and the rendition of judgment, but had conveyed her interest to another, the plaintiff in the proceedings, who purchased the premises at the partition sale, acquired no interest through such defendant.

4. EJECTMENT—ISSUES—TITLE OF PLAINTIFF.

In ejectment, under Code Civ. Proc. § 1501, authorizing such action by a grantee in the name of the grantor when the conveyance is void because the land was held adversely to the grantor at the time of the conveyance, the only issue which can properly be litigated is the ownership of the property as between defendant and plaintiff's grantor, and any title acquired by the grantee through other sources is immaterial.

Appeal from Trial Term, Niagara County.

Action by Martha J. Flagler and others against Elizabeth Devlin and another.   From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal.   Reversed.

The action in ejectment was commenced on the 6th day of October, 1902, to recover possession of a certain undivided interest in lands situate in the village of Olcott, county of Niagara, consisting of a lot upon which there was a small shanty, and alleged to be wrongfully withheld by the defendants.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

A. K. Potter, for appellants.
David Millar, for respondents.

McLENNAN, P. J.   The action is brought under section 1501 of the Code of Civil Procedure, is purely statutory, and to entitle the plaintiffs to the benefit of its provisions they must establish the existence of the prescribed conditions and a full compliance with its requirements.   The section is as follows:

"Such an action [an action in ejectment] may be maintained by a grantee, his heir, or devisee, in the name of the grantor, or his heir, where the con-

veyance, under which he claims, is void because the property conveyed was held adversely to the grantor. The plaintiff must be allowed to prove the facts to bring the case within this section. * * *"

The defendants contend that, under the circumstances shown to exist in this case, the plaintiffs are not entitled to maintain the form of action given by the section, and that the proof upon the merits did not entitle them to the judgment awarded. The evidence tends to show that on and prior to June 18, 1845, Oliver Corwin, Eliza, his wife, and Mary E. Taylor, the sole heir at law and devisee under the last will and testament of Edward Taylor, deceased, were the owners of, and were seised in fee simple of, an undivided four-ninths part of the premises in question; that on that day, by a deed duly executed and delivered by them, they conveyed their undivided interest to one Robert McKnight, and that he thereupon became seised of such interest. In October, 1847, said Robert McKnight, then being seised of said undivided four-ninths part of said premises, died intestate, leaving, him surviving, his widow and children, such children thereupon becoming the owners of the interest of which he died seised, subject to the widow's right of dower. Certain of such children or their heirs who became the owners of $68/405$ parts of the premises in question by the death of the father or ancestor, Robert McKnight, about the year 1892 conveyed their respective interests in said premises to Washington H. Ransom, mentioned in the complaint as the person in whose interest the action is brought, and they (such heirs) are the plaintiff grantors who bring the action. When said deeds were so executed and delivered by the plaintiffs to Ransom, the defendants were in the actual occupation and possession of the premises, claiming under a title adverse to that of said plaintiffs, and such adverse occupation and possession continued down to the time of the commencement of the action and still continues. These facts, standing alone, would bring the parties within the provisions of the section of the Code quoted, and the only issue to be tried would have been as to the title of the defendants. It appears, however, that in January, 1893, a partition action was commenced in the Supreme Court by Ransom, in which two, at least, of the plaintiffs in this action, Ransom's grantors, were made defendants, to wit, Robert J. and George M. McKnight. The defendant in this action, Elizabeth Devlin, was also made a defendant in that action; it being alleged that such defendants, and 12 others who were named, "are tenants occupying, severally or otherwise, some portion of said premises under and subordinate to the tenants in common thereof, or claiming some right or interest therein, or in specific portions thereof, the exact nature and extent of which claim, right, or interest in each case being unknown to the plaintiffs." Elizabeth Devlin made default in the action. The action of partition proceeded to judgment in the ordinary way, and it was adjudged that the interests of the various parties in the premises were as alleged in the complaint, and that the plaintiff Ransom was seised of $293/405$ parts thereof; that the defendant Elizabeth Devlin and 11 other defendants named were mere squatters upon the premises, and were without any title or claim or color

of title whatsoever. A sale of the premises was directed, Ransom became the purchaser, and a deed was executed to him in accordance with the provisions of the judgment. It is claimed that, as a result of such action of partition, Ransom acquired the interests of Robert J. and George M. McKnight in the premises in question, and therefore that it is not competent in this action, they being plaintiffs here, for them to assert their respective conveyances to Ransom in his interest or behalf. We think there is much force in the suggestion that, Ransom having, by the action in partition in which Robert J. and George M. McKnight were made defendants, obtained whatever interest they had in the premises, and thereby cured any infirmity in the deeds executed by them to him, they may not assert in this action the infirmity of such deeds in his interest, for the purpose of having it again adjudged that he is the owner and entitled to the possession of the interest so attempted to be conveyed by them. This objection did not appear upon the face of the complaint, but was raised by defendants' answer. We think it must be held that the plaintiffs Robert J. and George M. McKnight were not entitled to maintain this action, because Ransom could not claim in law the premises under or by virtue of the conveyances made by them, because, as we have seen, he had acquired title as between them and himself by virtue of the judgment in partition; and therefore it was of no consequence whether the deeds executed by them to him and set up in the complaint in this action were valid or otherwise. But this question is of minor importance in the determination of this appeal.

It appears that one John Devlin, who died intestate on the 20th of April, 1870, had occupied and lived upon the premises in question with his wife and family continuously for more than 30 years prior to his death; that his children, or some of them, continued to live there until the time of the commencement of this action, and still continue so to do; and that the mother, the widow of John Devlin, resided with them until her death in 1900. The evidence very conclusively shows that John Devlin and his successors in interest acquired a perfect title to the premises in question by adverse possession prior to the commencement of this action, and it was practically so held by the learned trial judge. At the close of the evidence, and when the attorneys for the respective parties moved for the direction of a verdict, the learned trial judge said:

"It appears to me from the evidence in this case that John Devlin and his successors in interest in the premises described in the complaint in this action acquired a perfect title to these premises by adverse possession prior to the 5th day of January, 1893 [the time of the commencement of the partition action]."

It would seem upon such finding, which is abundantly sustained by the evidence, that a verdict should have been directed in favor of the defendants, and the complaint dismissed. It, however, appeared that John Devlin and his wife died intestate, and left, them surviving, five daughters, including Elizabeth and Ella Devlin, these defendants, and one son; and, of course, upon the death of the father each of them became the owner of a one-sixth part of the

premises, if owned by him, subject to the dower interest of the mother. On October 9, 1882, the mother executed and delivered to one McCormick a deed of her interest in the premises, and on October 21, 1882, McCormick executed and delivered a deed of the same premises to the defendant Elizabeth Devlin. This, however, conveyed to Elizabeth only the dower right of her mother. Afterwards the brother died without issue, and thereupon the remaining children, the daughters of John Devlin, including the two defendants, became each the owner of an undivided one-fifth of the premises. Afterwards, and on the 15th of August, 1885, the defendant Elizabeth Devlin conveyed to her mother, Hannah, all her right, title, and interest in the premises. The deed was not recorded, but was delivered to the mother, and the mother was in possession; so that the widow of John Devlin, and his daughters other than the defendant Elizabeth, at the time of the commencement of the partition action each owned an undivided one-fifth of the premises, assuming, as found by the trial court, that John Devlin owned the same at the time of his death, and at that time (the time of the commencement of the partition action), Elizabeth Devlin had no right, title, or interest in or to the premises, she having conveyed the same to her mother in 1885. On February 25, 1896, the several children of Hannah Devlin then living, other than the defendant Elizabeth (she having conveyed her interest previously), conveyed their interest in the premises to the mother. The mother died in October, 1900, and after her death all her heirs, except the defendants Elizabeth and Ella Devlin, joined in a conveyance to said Elizabeth and Ella Devlin, these defendants. During all the times referred to, the said defendants continued to reside upon the premises in question.

The learned trial court evidently thought the evidence showed that the defendant Elizabeth Devlin, at the time of the commencement of the partition action, was the owner of an undivided one-fifth of the premises as heir of her father, John Devlin, the brother having died intestate and without issue, and the mother having conveyed her dower interest to her; evidently overlooking the fact, as was conclusively shown by the deed put in evidence, that in 1885 Elizabeth had conveyed her entire interest therein to her mother, Hannah, and therefore at the time of the commencement of such action had no possible interest therein. The court evidently was led to such mistake or erroneous conclusion by a statement or admission of the defendants' counsel in that regard. But, as we have seen, the fact was conclusively shown to be otherwise, to wit, that when the action in partition was commenced, and Elizabeth Devlin was made a party defendant thereto, she had conveyed all her interest in the premises to her mother, Hannah, and had no title, and did not claim to have any, thereto. As the result of the error on the part of the court as to what was established by the evidence in that regard, it said:

"I am going to hold at this time that the action is in proper form. That being so, and it being conceded that the defendant Elizabeth was the owner of an undivided one-fifth part of these premises on the 5th day of January,

1893, when the action in partition was begun, and she being made a party to that action, that the plaintiffs in this action are entitled to recover the possession of one-fifth part of the premises described in the complaint. That will be the disposition of this case, and the jury will find a verdict in accordance with what has been said."

Defendants' Counsel: "Can that be done in this action?"

The Court: "I am going to do it in this action."

Defendants' Counsel: "This is an action of ejectment."

The Court: "I understand; I think it meets the whole controversy on the merits. That will be the verdict of the jury in this case."

To which decision defendants' counsel excepted, and the counsel for the plaintiffs said: "I also ask an exception as to your giving us but one-fifth."

Such verdict for one-fifth was directed in favor of the plaintiffs, as we have seen, upon the theory that the defendant Elizabeth Devlin at the time of the commencement of the partition action was the owner of an undivided one-fifth interest in the premises; that by the judgment in such action, she having been made a party and having defaulted, Ransom acquired such interest, and that the interest so acquired by him was available to the plaintiffs in this action. At the time of the commencement of such action and the rendition of such judgment, Elizabeth Devlin did not own such interest or any interest in the premises, and therefore Ransom acquired no interest coming from her. Even if Elizabeth owned the one-fifth interest as found by the court, and Ransom had acquired it by the judgment in the partition action, it would not be available to the plaintiffs in this action. This action is brought, under the section of the Code referred to, solely upon the theory and because of the fact that the plaintiffs were the owners of the premises; that they had conveyed to the defendant under circumstances such as to render their conveyances void, and for the purpose of removing such infirmities from their deed; and it is of no consequence what title or interest Ransom may have acquired from other sources. There was therefore no basis for the direction of the verdict that the plaintiffs were the owners of an undivided one-fifth interest in the premises. Such direction was made, concededly, not because of any interest which the plaintiffs had at the time they executed and delivered their respective conveyances to Ransom, but because of an interest which Ransom was assumed to have acquired wholly independent of such conveyances, and independent of any acts done by the plaintiffs.

In this case it is considered that it is of no importance whether the defendants' counsel inadvertently or otherwise assented to the proposition that Elizabeth Devlin owned at the time of the commencement of the partition action a one-fifth interest in the premises, because even if such were the fact, and Ransom had acquired such interest by the judgment in such action, it would not be available to the plaintiffs or to him in this action. But, as we have seen, such was not the fact. The only issue tendered by the pleadings and which was litigated upon the trial, or which could properly have been litigated, was whether or not the defendants were the owners of the property as against the plaintiffs. The court found, in substance, that they were such owners, because the father, John Devlin, had become the absolute owner by adverse possession before his death. That being so, it follows that the heirs of John Devlin had a right to deal with

the property as they saw fit; and, the defendants having become the owners by mesne conveyances from such heirs, they are entitled, under such finding of fact, to retain the possession of the premises, and a verdict in their favor should have been directed, and judgment entered accordingly, with costs.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur

Judgment and order reversed, and new trial granted, with costs to appellant to abide event, upon question of law only; the facts having been examined, and no error found therein.